# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Edward A. Bobrick | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 842 | **DATE** | 7/6/2000 |
| **CASE TITLE** | Rita Elliott vs. Lake County Community Action Projec | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ■ Status hearing re-set for 7/13/00 at 10:00 A.M..
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter Memorandum Order. Defendant's motion to dismiss plaintiff's complaint is denied as to Counts I and III, and granted as to Count II. Status set for 7/13/00 at 10:00 A.M. in Courtroom 1300.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | |
|---|---|---|---|---|
| | No notices required. | | 2 number of notices | Document Number |
| ✓ | Notices mailed by judge's staff. | | JUL - 6 2000 date docketed | |
| | Notified counsel by telephone. | | | |
| | Docketing to mail notices. | | | 16 |
| | Mail AO 450 form. | | 15 docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| TH ✓ | courtroom deputy's initials | | 7/6/2000 date mailed notice | |
| | | Date/time received in central Clerk's Office | TH mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

RITA ELLIOTT,

Plaintiff,

vs.                                      No. 00 C 0842

LAKE COUNTY COMMUNITY ACTION
PROJECT, a not-for-profit corporation,

Defendant.

DOCKETED
JUL - 6 2000

## MEMORANDUM ORDER

Before the court is the motion of defendant Lake County Community Action Project ("LCCAP") to dismiss the complaint of plaintiff Rita Elliott.

## I. BACKGROUND

Plaintiff began work as a "Lead Teacher" for a Head Start Program with LCCAP in 1976. In September of 1999, she was suspended and, by October of 1999, terminated from her position. According to plaintiff, LCCAP did this in retaliation for her involvement with a citizens group that was critical of LCCAP's executive director, Barbara Gordon. Plaintiff brings Count I of her complaint under the whistleblower provision of the Fair Claims Act. 31 U.S.C. §3730(h). She brings Counts II and III under Illinois common law, alleging retaliatory discharge and breach of contract. Defendant now moves to dismiss plaintiff's claims.

16

## A. Plaintiff's Allegations

In considering a motion to dismiss, we accept as true all well-pleaded factual allegations and draw all possible inferences in favor of the plaintiff. *Menominee Indian Tribe of Wisconsin v. Thompson*, 161 F.3d 449, 456 (7th Cir. 1998). At the end of the year in 1998, the LCCAP director, Barbara Gordon, gave plaintiff a bonus check of $500. According to plaintiff, her bonus was funded by a Head Start program grant. At the time, Gordon told plaintiff that she "expected to get $100 back out of that bonus. Allegedly, Gordon made similar statements to other employees and, in the past, had sent flyers requesting contributions from employees for a Head Start capital campaign. (*Complaint*, ¶¶ 6-12).

In the Spring of 1999, plaintiff joined a group of employees and parents who were concerned about Gordon's practices. Plaintiff attended meetings dealing with various perceived problems, including Gordon's treatment of parents, children, and staff, her wrongful use of funds, falsification of claims, extortion of money from staff, mismanagement of funds, and improper use of funds. The group contacted the office of the Inspector General regarding its concerns, as well as the regional office of the Head Start program. The group also sent a letter charging Gordon with corruption, mismanagement, fraud, and undue influence, to several federal, state, and local authorities.

Plaintiff believes that Gordon was aware of her participation in the group. (*Complaint*, ¶¶ 13-23).

In the Spring of 1999, Gordon was suspended pending an investigation. When the investigation concluded, she was reinstated, and auditors made several recommendations regarding her management of LCCAP. Among these, was that employees be allowed the opportunity to get back any "donations" they had made in the past. On September 7, 1999, plaintiff requested the return of $50. Shortly thereafter, on September 17th, plaintiff was suspended. Then, on October 28th, she was terminated. (*Complaint*, ¶¶24-31). She claims that this was in retaliation for "lawful acts done by her in furtherance of an action under the False Claims Act." (*Complaint*, ¶ 33). She also claims it was a breach of contract.

### B. Defendant's Arguments

Defendant contends that plaintiff has failed to adequately allege a claim under 31 U.S.C. § 3730(h), in that she has not alleged that she acted in furtherance of a claim under the False Claims Act. If this count is dismissed, argues defendant, then the state law claims should be dismissed for lack of jurisdiction. In addition, defendant also attacks the substance of the state law claims. Defendant argues that plaintiff has not adequately alleged a claim for retaliatory discharge, and cannot maintain her breach of contract claim. We turn now to examine each count of plaintiff's complaint.

## II. ANALYSIS

A complaint will not be dismissed unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of its claim which would entitle it to relief. *Cook v. Winfrey*, 141 F.3d 322, 327 (7th Cir. 1998). We must read the complaint liberally and accept as true the well-pleaded allegations and the inferences that may reasonably be drawn from those allegations. *Saperstein v. Hager*, 188 F.3d 852, 855 (7th Cir. 1999). "The issue is not whether a plaintiff will ultimately prevail, but whether he is entitled to offer evidence to support the claims." *Id.*

### A. Whistleblower Claim

The False Claims Act, 31 U.S.C. §§ 3729-31 penalizes contractors who knowingly submit fraudulent claims for payment to the United States.[1] In 1986, Congress added a

---

[1] (a) Liability for certain acts.--Any person who--
　(1) knowingly presents, or causes to be presented, to an officer or employee of the United States Government or a member of the Armed Forces of the United States a false or fraudulent claim for payment or approval;
　(2) knowingly makes, uses, or causes to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the Government;
　(3) conspires to defraud the Government by getting a false or fraudulent claim allowed or paid;
　(4) has possession, custody, or control of property or money used, or to be used, by the Government and, intending to defraud the Government or willfully to conceal the property, delivers, or causes to be delivered, less property than the amount for which the person receives a certificate or receipt;
　(5) authorized to make or deliver a document certifying receipt of

(continued...)

"whistleblower-protection" provision, forbidding employers from retaliating against employees who turn them in for violating the Act. *Neal v. Honeywell,* 191 F.3d 827, 829 (7th Cir. 1999). The amendment provides:

> (h) Any employee who is discharged, demoted, suspended, threatened, harassed, or in any other manner discriminated against in the terms and conditions of employment by his or her employer because of lawful acts done by the employee on behalf of the employee or others in furtherance of an action under this section, including investigation for, initiation of, testimony for, or assistance in an action filed or to be filed under this section, shall be entitled to all relief necessary to make the employee whole. Such relief shall include reinstatement with the same seniority status such employee would have had but for the discrimination, 2 times the amount of back pay, interest on the back pay, and compensation for any special damages sustained as a result of the discrimination, including litigation costs and reasonable attorneys' fees. An employee may bring an action in the appropriate district court of the United States for the relief provided in this subsection.

---

[1](...continued)
    property used, or to be used, by the Government and, intending to defraud the Government, makes or delivers the receipt without completely knowing that the information on the receipt is true;
     (6) knowingly buys, or receives as a pledge of an obligation or debt, public property from an officer or employee of the Government, or a member of the Armed Forces, who lawfully may not sell or pledge the property; or
     (7) knowingly makes, uses, or causes to be made or used, a false record or statement to conceal, avoid, or decrease an obligation to pay or transmit money or property to the Government,

is liable to the United States Government for a civil penalty of not less than $5,000 and not more than $10,000, plus 3 times the amount of damages which the Government sustains because of the act of that person. 31 U.S.C. § 3729(a).

31 U.S.C. § 3730(h). Courts have delineated three elements of a claim under the whistleblower provision: (1) the employee must be engaged in conduct protected by the statute, (2) the employer must know the employee is engaged in such conduct, and (3) the employer must have discriminated against the employee because of such conduct. *Luckey v. Baxter Healthcare Corp.*, 2 F.Supp.2d 1034, 1050 (N.D.Ill. 1998), *aff'd* 183 F.3d 730 (7th Cir. 1999). In this case, defendant contends that plaintiff has failed to adequately allege the first element of a § 3730(h) claim.

The first element requires that the employee be engaged in conduct protected by the FCA. Courts must examine the type of activity and the employee's reason for engaging in that activity. *Luckey*, 2 F.Supp.2d at 1051. Defendant argues that plaintiff has not alleged she engaged in protected activity because there is no claim that an FCA action was filed or was to be filed. Most courts, however, do not require that an action be filed for an employee to maintain a claim. In *Neal v. Honeywell Inc.*, 33 F.3d 860 (7th Cir. 1994), the Seventh Circuit interpreted the requirement as including situations where "litigation was a distinct possibility;" that is, where "litigation could be filed legitimately . . . consistently with Fed.R.Civ.P. 11." 33 F.3d at 864. This view is in general accord with other circuits. *U.S. ex rel. Yesudian v. Howard University*, 153 F.3d 731, 740 (D.C. Cir. 1998)(sufficient that plaintiff be investigating matters that reasonably could lead to viable FCA claim); *Childree v. UAP/GA AG CHEM, Inc.*, 92 F.3d 1140, 1146 (11th Cir. 1996)(requiring distinct possibility of suit); *United States ex rel. Hopper v. Anton*, 91 F.3d

6

1261, 1269 (9th Cir. 1996) (Plaintiff must be investigating matters which are calculated, or reasonably could lead, to viable FCA action).

Here, plaintiff alleges she was part of a group that was concerned with purported misdealings in the LCCAP and reported its suspicions to several authorities, including the Inspector General. As a result, Gordon was suspended, and an investigation ensued. While Gordon was cleared, we do not think this dooms plaintiff's complaint–at least not at this early stage. In *Neal*, the employer staved off an FCA suit by settling with the government. The court noted that the settlement should not be looked upon as the purchase of an option to retaliate against the employee that initiated the investigation. 33 F.3d at 864. In this case, the plaintiff allegedly had information that Gordon engaged in a kickback scheme involving federal funds. She took part in communicating that information to the proper authorities and precipitated an investigation. While the investigation did not lead to a suit, such a requirement would gut the protection intended to be afforded the whistleblower. If employers are free to fire employees whose suspicions fail to pan out, the risk would likely be too great for anyone to investigate or report their suspicions. In the context of a motion to dismiss, we are unwilling create such exposure.

## B. Retaliatory Discharge

Plaintiff brings Count II under the Illinois common law, alleging retaliatory discharge. An employee can state a claim for retaliatory discharge only if she can demonstrate that she was terminated for her actions, and that the termination violated a

7

clear mandate of public policy. *Palmateer v. International Harvester Co.*, 85 Ill.2d 124, 421 N.E.2d 876 (1981). The public policy must be found in the state's constitution, statutes or, where they are silent, in the judicial decision of the state's courts. *Id.* In order to survive a motion to dismiss, a plaintiff must show that a cited provision embodies a public policy, and that her discharge contravenes that public policy. *U.S. ex rel. Chandler v. Hektoen Institute*, 35 F.Supp.2d 1078, 1082 (N.D.Ill. 1999). Simply citing a constitutional or statutory provision is not enough–the policy identified in the complaint must strike at the heart of a citizen's social rights, duties and responsibilities before a tort will be allowed, or involve the protection of each citizen's health and safety. *Leweling v. Schnadig Corp.*, 276 Ill.App.3d 890, 894, 675 N.E.2d 1107, 1109 (1st Dist. 1995); *Hicks v. Resolution Trust Corp.*, 970 F.2d 378, 381(7th Cir. 1992).

Here, plaintiff alleges she "was fired for reporting Defendants' criminally fraudulent waste of federal, state, and local funds to the appropriate authorities." (*Complaint*, ¶ 35).[2] The only provision cited anywhere in plaintiff's complaint is the FCA. Obviously, this is not a state-law-based expression of public policy; yet, the Illinois Supreme Court has indicated that Federal laws that are national in scope and affect citizens generally can state

---

[2] In her response to defendant's motion to dismiss, plaintiff states that she was discharged for reporting child abuse, contrary to the allegations in her retaliatory discharge claim. of course, plaintiff may not amend her complaint in an opposition brief. *Shanahan v. City of Chicago*, 82 F.3d 776, 779 (7th Cir. 1996); *420 East Ohio Ltd. Partnership v. Cocose*, 980 F.2d 1122, 1125 (7th Cir. 1992).

public policy. *Wheeler v. Caterpillar Tractor Co.*, 108 Ill.2d 502, 485 N.E.2d 372 (1985). Specifically, Illinois courts have consistently held that policies affecting the health and safety of citizens will support a claim of retaliatory discharge. *Leweling*, 276 Ill.App.3d at 894, 657 N.E.2d at 1110 (cases cited). On the other hand, public policies associated with social and economic regulations are less likely to support a claim. *Id.* Thus, courts have refused to recognize retaliatory discharge claims based on the FCA. *Hektoen*, 35 F.Supp.2d at 1083; *United States ex rel. Dihu v. IIT Research Institute*, 1998 WL 299390 (N.D.Ill. May 21, 1998). Accordingly, in the instant case, plaintiff's retaliatory discharge claim must be dismissed.[3]

### C. **Breach of Contract**

In Count III of her complaint, plaintiff alleges that defendant breached the terms of her employment contract, which provided that she could not be fired for activities protected, or otherwise provided for, by law. (*Complaint*, ¶ 41). Defendants argue that plaintiff was an employee-at-will and that she cannot maintain a breach of contract claim. Review of the parties' submissions on this point reveal only confusion as to whether plaintiff had an express or implied employment contract. To the extent the parties' can

---

[3] These courts have also held that, even if a plaintiff alleged a violation of public policy, the FCA provides an adequate remedy such that Illinois courts would not expand the tort of retaliatory discharge. *Hektoen*, 35 F.Supp.2d at 1083; *Dihu*, 1998 WL 299390, at *8.

9

remedy this, it would appear to be more amenable to summary judgment than a motion to dismiss. At this point in the litigation, then, plaintiff's claim will be allowed to stand.

### III. CONCLUSION

For the foregoing reasons, defendant's motion to dismiss plaintiff's complaint is DENIED as to Counts I and III, and GRANTED as to Count II.

ENTERED: *Edward A. Bobrick*
EDWARD A. BOBRICK
United States Magistrate Judge

DATE: July 6, 2000